CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 17 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FRANCIS J. WOLOWSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:07cv430 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Francis J. Wolowski ("Wolowski") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits under the Social Security Act (the "Act"). On appeal, Wolowski contends that the Administrative Law Judge ("ALJ") erred in failing to give proper weight to the opinions of two of his treating physicians, Drs. Mann and Chen. Having reviewed the record, the undersigned finds no error in the ALJ's treatment of Dr. Mann's opinion. However, the ALJ failed to provide sufficient reasoning for the weight given to Dr. Chen's opinion. Therefore, the undersigned is constrained to find that the ALJ's opinion is not supported by substantial evidence and recommends that this case be remanded for proper evaluation of Dr. Chen's opinion and medical records.

I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial

1

evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart,

2

296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the RFC,[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

Wolowski was born in 1950, (Administrative Record, hereinafter "R." 17, 50, 395), and received his general equivalency diploma. (R. 17, 395.) Prior to the alleged onset date, Wolowski worked as a carpenter, (R. 17, 58, 399), and he has also worked as a deputy sheriff. (R. 17, 58, 397.)

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 404.1529(a).

Wolowski alleges a disability onset date of September 3, 2003, due to severe arthritis, fibromyalgia, knee problems and high blood pressure. (R. 17, 50, 95, 96.) His application for benefits was rejected by the Commissioner initially and again upon reconsideration. An administrative hearing was convened before an ALJ on September 26, 2006. (R. 389-424.) In determining whether Wolowski was disabled under the Act, the ALJ found that his degenerative disc disease, degenerative joint disease/osteoarthritis, history of medial meniscus tear of the left knee, substance abuse, fibromyalgia, and history of Lyme disease all qualify as severe impairments, pursuant to 20 C.F.R. § 404.1520(c). (R. 22.) The ALJ also found that Wolowski has the RFC to perform light work that does not require climbing ladders, ropes or scaffolds, and involves no more than occasional climbing stairs/ramps or pushing/pulling with the lower extremities. (R. 22.) Finding there are a significant number of jobs in the national economy that he can perform, the ALJ held that Wolowski is not disabled under the Act. (R. 22.) The Appeals Council denied Wolowski's request for review and this appeal followed. (R. 6-8.)

### III

Wolowski argues that the ALJ erred by failing to give proper weight to the opinions of his treating physicians, Drs. Mann and Chen. The ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 404.1527(d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating

physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations…."); Social Security Ruling ("SSR") 96-2p.

The ALJ is to consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527(d). A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," Mastro, 270 F.3d at 178, and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("[T]he notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."); see also Kratzer v. Astrue, No. 5:07cv00047, 2008 WL 936753, at *7 (W.D.

5

Va. 2008) (noting the ALJ is expressly obligated to explain the consideration given to his opinions).

### IV

Dr. Mann treated Wolowski from 2003-2005 for a work-related left knee injury, which occurred on September 2, 2003. On September 29, 2003, Dr. Mann diagnosed Wolowski with a MCL sprain/strain, a medial meniscus tear, and underlying degenerative changes. (R. 207-08.) Dr. Mann recommended a Neoprene knee sleeve and physical therapy, and stated Wolowski could stand with his knee sleeve, do some bending or squatting, and lift up to 50 pounds, but could not climb a ladder or work on a roof. (R. 207.)

After a number of physical therapy sessions, (R. 175-89), Wolowski returned to Dr. Mann's office on November 3, 2003. (R. 205-06.) Due to persistent symptoms and a medial meniscus tear, Dr. Mann recommended proceeding with arthroscopy. (R. 206.) On November 12, 2003, arthroscopy of the left knee was performed, revealing grade IV chondromalacia of the medial femoral condyle, the medial tibial plateau, 30-40% each, grade III chondromalacia of the patella 30-40%, tear of his medial meniscus and a tear of the lateral meniscus. (R. 145-51, 199.) During Wolowski's first post-operative visit, Dr. Mann stated that Wolowski should continue with physical therapy. (R. 199.) He also noted Wolowski would be out of work for at least two weeks and then may be released to light duty. (R. 199.) On November 24, 2003, Dr. Mann continued to recommend physical therapy and released Wolowski to light duty work beginning December 1, 2003, limiting standing and walking to 30% of the day, with no bending, squatting or lifting over 30 pounds. (R. 198.)

6
Case 7:07-cv-00430-JCT-mfu   Document 16   Filed 11/17/08   Page 6 of 16   Pageid#: 68

At an office visit on December 10, 2003, Wolowski reported that his knee was much improved, and Dr. Mann noted he was making good progress and should be at maximum medical improvement in four to five weeks. (R. 196.) Dr. Mann released him to partial duty at work and stated he could lift up to 40 pounds, do some crawling, bending and stooping but for no more than up to 30% of the day, stand 31-60% of the day, work on a step ladder but not an extension ladder, and advised him not to work on roofs. (R. 196.) In a January 14, 2004 office visit, Dr. Mann continued to impose these restrictions, (R. 194), and on February 11, 2004, Dr. Mann made the restrictions permanent. (R. 193.) Although Dr. Mann's notes indicate that Wolowski reported that he was not working due to complaints of pain, Dr. Mann's restrictions remained unchanged. (R. 191-92.) In a form completed on January 31, 2005, Dr. Mann reiterated these restrictions and also noted Wolowski was limited to performing overhead work for 30% of the day. (See R. 387.)

The ALJ's explanation of the weight given to Dr. Mann's opinion is sparse. The ALJ gave little weight to Dr. Mann's restrictions on bending and overhead work, stating Dr. Mann treated Wolowski for knee problems, which should not affect these functions. (R. 21.) Wolowski claims that, as a treating physician, Dr. Mann's opinion was entitled to greater weight. However, even if the ALJ had adopted Dr. Mann's opinion in its entirety, it still would not have supported a finding that Wolowski was disabled, as Dr. Mann released Wolowski to light work, made those restrictions permanent, and gave no opinion on total disability. At the administrative hearing, the ALJ posed a hypothetical to the vocational expert (VE) incorporating Dr. Mann's limitations:

> Q. New hypothetical …. This individual can occasionally do overhead work; can occasionally crawl,

> bend, stoop, climb; is limited to no lifting over 40 pounds; and this individual shouldn't have a job that requires driving a car or small truck.[2] With the limitations I've just described, first, could he do the security guard job?
>
> A.    I think so.
>
> Q.    Cashier?
>
> A.    Some modest reduction, modest reduction. Some few may require driving, so, modest reduction.

(R. 420.) Wolowski would not have been found disabled under the Act, even if the ALJ had given greater weight to Dr. Mann's opinion. Thus, there was no error requiring reversal or remand merely because the ALJ declined to give Dr. Mann's bending and overhead restrictions greater weight.

V

Wolowski also claims the ALJ erred by failing to give proper weight to the opinion of Dr. Chen. Dr. Chen is a rheumatologist who treated Wolowski for joint pain for at least three years. Records reflect that Wolowski presented to Dr. Chen on December 3, 2002 for a follow-up visit for inflammatory arthropathy,[3] and that both his inflammatory polyarthropathy and osteoarthrosis[4] had deteriorated. (R. 248.) New problems included cervical spondylosis with radiculopathy. (R. 248.) Wolowski

---

[2] Dr. Mann's restrictions actually permitted Wolowski to drive a car or small truck, but not a large truck or 18-wheeler. (R. 193, 194, 196, 387.)

[3] Inflammatory arthropathy is a disease of a joint of inflammatory origin. Dorland's Illustrated Medical Dictionary 156-57 (30th ed. 2003).

[4] Osteoarthrosis, or osteoarthritis, is a noninflammatory degenerative joint disease characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane. It is accompanied by pain, usually after prolonged activity, and stiffness, particularly in the morning or with inactivity. Dorland's Illustrated Medical Dictionary 1333 (30th ed. 2003).

8

reported experiencing increased pain in all joints, especially his knees, which worsens with activity and towards the end of the day. (R. 248.) Wolowski reported frequently working on his knees, and experiencing frequent flares of numbness and tingling in arms and pain in his elbows, as well as headaches. (R. 249.) A physical examination revealed trigger points present over the trapezius, elbows and shoulders, a mildly decreased range of motion in the distal interphalangeal ("DIP") joints, obvious bony deformity noted in the left elbow, and a mildly tender left metatarsophalangeal ("MTP") joint. (R. 249.) Wolowski was advised to continue taking Bextra and add 1500 mg of Osteobiflex daily, and he was instructed to use heat and ice for pain management. (R. 248.)

At an office visit on March 4, 2003, Wolowski's inflammatory arthropathy remained unchanged. (R. 240.) Wolowski complained of constant pain all over and numbness and tingling in his hands and arms. (R. 244.) Upon examination, proximal interphalangeal ("PIP") joints 2 and 3 were bilaterally swollen and tender with boney abnormality, his right elbow had a limited range of motion, there were bilateral boney abnormalities in his knees (left more than right), his ankles were bilaterally swollen and tender, and there was swelling in his MTP joints. (R. 244.) As Bextra provided no relief, his prescriptions were changed to 600 mg of Daypro (2 tablets daily), 650 mg of Darvocet and 200 mg of Clinoril (2 tablets daily).

On June 3, 2003, Dr. Chen noted that Wolowski's inflammatory polyarthropathy had deteroriated and questioned whether myalgia[5] might also be a problem. On examination, triggers were present over the trapezius, elbow and shoulders, chest wall,

---

[5] Myalgia is defined as pain in a muscle or muscles. Dorland's Illustrated Medical Dictionary 156-57 (30th ed. 2003). Fibromyalgia is defined as pain and stiffness in the muscles and joints that is either diffuse or has multiple trigger points. Id. at 697.

knees and hips. (R. 238.) The right DIP joints were generally tender but not swollen; all right PIP joints and left joints 2, 3 and 4 were tender, joints 2 and 3 were swollen bilaterally; metacarpophalangeal ("MCP") joints 1 and 2 were swollen and tender bilaterally; his left wrist was swollen and tender; his right elbow had a limited range of motion; he had a bilateral boney abnormality in his knees (left more than right), and they were bilaterally tender; his right ankle was swollen and tender, and the left was tender but not swollen. (R. 238) He was prescribed Azulfidine 500 mg with instructions to take one tablet twice daily for the first week, then two tablets twice daily. (R. 237.)

On August 14, 2003, his right PIP joints 2, 3, and 4, and left joints 2 and 3, were swollen and tender; MCP joints 1, 2 and 3 were swollen and tender bilaterally; knees were bilaterally tender and the right knee was mildly swollen; ankles were bilaterally swollen and tender; all MTP joints were tender bilaterally, joint 1 was swollen and tender. (R. 231.) Likewise at an office visit on June 10, 2004, a physical exam revealed 18/18 tender triggers; the PIP joints were swollen and tender bilaterally, right more than left; MCP joints 1 and 2 were tender and swollen bilaterally; his shoulders were tender with limited range of motion; his right knee was tender; his ankles were swollen and tender; and his MTP joints were tender. (R. 217-19.)

On September 14, 2004, Dr. Chen assessed Wolowski's myalgia and polyarthropathy, and noted that he had not responded to multiple treatments, including prednisone. (R. 214.) Records reveal Wolowski saw Dr. Banks and had been prescribed methadone for chronic pain. (R. 214.) Wolowski described his pain as being 10 out of 10 on a pain scale, and physical examination revealed 18/18 trigger points. (R. 215.) His PIP joints were bilaterally swollen and tender; all MCP joints were tender; his elbows

10
Case 7:07-cv-00430-JCT-mfu Document 16 Filed 11/17/08 Page 10 of 16 Pageid#: 72

were tender; his shoulders were bilaterally tender; his right knee was tender; and his ankles were tender and swollen. (R. 215.)

On March 15, 2005, office notes reveal Wolowski's myalgia, polyarthropathy and osteoarthritis all remained unchanged. (R. 211.) Wolowski continued to complain of pain in all joints, ranging from 7 to 10 on the pain scale. (R. 211.) He continued to have 18/18 tender triggers; bilateral boney abnormality and mildly swollen and tender PIP joints; bilaterally tender MCP joints; mildly swollen and bilaterally tender wrists; bilaterally tender shoulders, the right with limited abduction; bilaterally tender left knee with boney abnormality; bilaterally tender ankles; and tender MTP joints. (R. 212.) Wolowski was instructed to continue pain management and return to Dr. Chen for observation in six months to one year. (R. 211.)

On October 21, 2005, Dr. Chen wrote a letter stating Wolowski "is disabled due to fibromyalgia, ulnar neuropathy and spondylosis." (R. 361.)

In his disability determination, the ALJ noted that he was not unmindful of Dr. Chen's opinion. (R. 21.) If that is indeed true, it is not reflected in the record. The ALJ devoted a mere one line of his analysis to Dr. Chen's findings, stating:

> Because Dr. Chen's statement addresses an issue reserved
> to the Commissioner, and because it is not supported by the
> objective evidence of record (to say nothing of the fact that
> it was rendered more than 7 months after she last examined
> claimant), it is entitled to very little weight.

(R. 21.) This sentence is not a sufficient explanation under the regulations for why the ALJ discounted Dr. Chen's opinion. See 20 C.F.R. § 404.1527(d). Thus, the undersigned cannot find that the Commissioner's decision is based on substantial evidence.

The ALJ must consider a number of factors in determining what weight to give a treating physician's opinion, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527(d). In the instant case, the ALJ gives no indication that he weighed such factors, nor does he provide his reasons for discounting Dr. Chen's opinion. See Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons for the weight given to the treating source's medical opinion."); SSR 96-2p ("[T]he notice of determination or decision must contain specific reason for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). The ALJ simply states that Dr. Chen's opinion "is not supported by the objective evidence of record." (R. 21.)

Dr. Chen, a rheumatology specialist, had an ongoing treating relationship with Wolowski over a period of at least three years. During that time, Wolowski complained of pain, tingling, and numbness in the arms and hands. Dr. Chen diagnosed him with fibromyalgia and inflammatory polyarthropathy, and her clinical findings support these diagnoses. Notes reflect consistent swelling and tenderness in the joints and 18/18 trigger points. In his decision, the ALJ failed to discuss Dr. Chen's findings over the last three years, her diagnoses or office notes. While the ALJ asserts that Dr. Chen had not seen Wolowski seven months prior to rendering the opinion on disability, (R. 21), the record

12
Case 7:07-cv-00430-JCT-mfu   Document 16   Filed 11/17/08   Page 12 of 16   Pageid#: 74

suggests otherwise. On August 22, 2005, Dr. Chen ordered x-rays of Wolowski's hands. (R. 161-62.)

Moreover, other evidence of record supports Dr. Chen's findings. Dr. Hooper noted on November 15, 2002 that Wolowski was a "complex patient with severe arthritis, right elbow, with stable anterior transposition of the ulnar nerve of the right elbow, limb pain and parethesias secondary to possible cervical radiculopathy, cervical arthritis, remote history of Lyme's disease." (R. 131.)

On November 1, 2002, Dr. Chen ordered a cervical spine x-rays which showed narrowing disk space and degenerative spurring in the lower C-spine, especially at C5-6, and bilateral foraminal narrowing at C5-6. (R. 157.) Dr. Chen further ordered an MRI of the C-spine on November 5, 2002, which revealed a right paracentral disk herniation impinging on the C5 nerve root, bilateral uncal vertebral and facet hypertrophy, moderate right and mild left foraminal stenosis, and a moderate sized left paracentral spondylotic disk herniation at C5-6 which indents the thecal sac and deforms the cord, which may impinge on the left C6 nerve root. (R. 158.) Additionally, C6-7 had a mild disk bulge and mild uncal vertebral and facet hypertrophy resulting in mild foraminal stenosis and a small right paracentral disk herniation at T2-3. (R. 158.)

Dr. Burch noted on February 21, 2003 that Wolowski had "extensive spondylitic and disc disease in the cervical spine by way of recent MRI imaging of the cervical spine." (R. 144.) His records reflect that an MRI showed multi-level severe degenerative disk changes with paracentral disk herniation to the right at C4-5 impinging the right C5 nerve root, a moderate right C5-6 foraminal stenosis and a left-sided paracentral spondylotic disk herniation indenting the thecal sac at that level, as well as evidence of

impingement of the left C6 nerve root and foraminal stenosis at C6-7 levels. (R. 131; see also 158.)

After an abnormal nerve conduction and electromyography study revealed severe right ulnar mononeuropathy with two levels of entrapment, (R. 136), Dr. Hooper performed a right elbow debridement and anterior transposition of the ulnar nerve and simultaneous carpal tunnel release in January, 2002. (R. 128.) Records indicate Wolowski "really failed to adequately improve since surgery." (R. 128.) On March 7, 2003, post-surgery, a follow up nerve conduction and electromyography study showed evidence of a demyelinating sensory polyneuropathy and evidence of a subtle left median mononeuropathy at the wrist. (R. 138.)

While he was treating with Dr. Chen, Wolowski also presented numerous times to Carilion Family Medicine complaining of joint pain. (R. 253, 261-63, 265, 268, 282-84, 290, 294, 307, 314, 328.) Records reveal diagnoses of inflammatory polyarthropathy, (R. 261, 268, 307, 314), osteoarthritis, (R. 268, 314), ulnar neuropathy, (R. 268, 314), and cervical spondylosis with radiculopathy. (R. 265, 311, 314.) On September 16, 2003, Dr. Banks at Carilion Family Medicine noted Wolowski "[h]as had extensive eval[uation] and [management] per Dr. Chen but now needs gen[eral] pain [management]." (R. 282.) Wolowski has been prescribed methadone, (R. 265, 267, 268, 269, 294), and percocet, (R. 272, 284, 330), for pain.

The record is replete with Wolowski's complaints of chronic joint pain, which he appears to have suffered for over a decade. (See, e.g., R. 129, 147, 253, 261-64, 282, 294, 400-02.) Wolowski discussed his pain at the administrative hearing, noting, "the pain in the joints is always present. The only thing that changes is the extent of the pain." (R.

14

400.) At the administrative hearing, Wolowski also recounted loss of grip strength in his right hand, stating he had dropped a glass two days earlier, something he does frequently. (R. 406.) In terms of his daily activities, he relates that he "tinkers around the house," sits outside, rests, and watches television. (R. 66.) He complains of having trouble buttoning clothes, tying shoes, putting on socks and shaving. (R. 67.) Wolowski has a handicap parking decal, which he believes was prescribed by Dr. Chen. (R. 410.)

Dr. Chen's opinion as to Wolowski's total disability is indeed a decision reserved to the Commissioner. 20 C.F.R. § 404.1527(e). However, under the regulations, the ALJ must explain his rationale for giving little or no weight to the opinion of a treating physician, and it must be supported by the record. In this case, he gives no rationale for the weight given to Dr. Chen's findings, and the record does not support an outright rejection of her opinion. The ALJ cites neither a contradictory treating physician's opinion nor persuasive contradictory evidence to support the weight given to Dr. Chen's opinion. While the ALJ's ultimate assessment of Dr. Chen's opinion may be correct, the undersigned cannot say that the ALJ's decision is supported by substantial evidence without any explanation for his rationale in rejecting the opinion of this treating physician. Therefore, the undersigned recommends that this case be remanded for proper evaluation of Dr. Chen's opinion and medical records.

## VI

At the end of the day, it is not the province of the reviewing court to make a disability determination. Rather, it is the court's role to determine whether the Commissioner's decision is supported by substantial evidence. In this case, the undersigned concludes that substantial evidence does not support the Commissioner's

decision, as no rationale is given for the rejection of Dr. Chen's opinion. Accordingly, the undersigned recommends that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative consideration.

The Clerk is directed to transmit the record in this case to James C. Turk, United States District Judge and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

ENTER: This 17th day of November, 2008.

Hon. Michael F. Urbanski
United States Magistrate Judge